### Application of ROYAL FLEET SERVICE, Inc., et al.
### No. 5162-CCT.

Railroad & Public Utilities Commission.

September 30, 1959.

Alan B. Brody, Miami, for Rapid Delivery Service, Inc. and the Industrial National Bank of Miami, joint applicants, and Van C. Kussrow, as trustee in bankruptcy for Royal Fleet Service, Inc., United Parcel Service, Inc. and Florida United Parcel Service, Inc.

David M. Turner, Miami and Robert C. Boozer, Atlanta, Ga., for Railway Express Agency, Inc., protestant.

Leon D. Black, Jr., Kelly, Paige & Black, Miami, for Delivery Service, Inc., protestant.

Sanford Freed, Miami, for Sands Delivery Service and Red Arrow Delivery Service, protestants.

William H. Benson, Bond & Bright, Miami, for Ace Delivery Service, Inc., protestant.

Chairman JERRY W. CARTER, Commissioners WILBUR C. KING and ALAN S. BOYD, each participated in the disposition of this cause.

## BY THE COMMISSION.

Approval is here sought for the transfer of certificate of public convenience and necessity # 418 from Van C. Kussrow, as trustee in bankruptcy of Royal Fleet Service, Inc., to the Industrial National Bank of Miami, and from said bank to Rapid Delivery Service, Inc. The certificate authorizes the transportation in common carriage of packaged and unpackaged general merchandise in a parcel delivery service over irregular routes on irregular schedules to, from and between points and places in Dade, Broward and Palm Beach counties, limited to parcels weighing not more than 75 pounds and to shipments weighing not more than 75 pounds, mov-

ing from one shipper to one consignee on the same vehicle on the same day.

Certificate # 418 was heretofore issued to Royal Fleet Service, Inc. on January 8, 1953 and was subsequently extended on June 11, 1954 and on March 12, 1956 by orders ## 2986 and 3425, respectively. As extended it encompasses all of the authority above set forth.

On April 26, 1955, Royal Fleet Service, Inc., being indebted to the Industrial National Bank of Miami in the sum of $34,950, assigned the certificate to the bank to secure the indebtedness. On April 16, 1957, Royal Fleet Service, Inc. was adjudged a bankrupt by the United States District Court, Southern District of Florida, Miami Division, and subsequently Van C. Kussrow was duly appointed trustee in bankruptcy and duly qualified in such capacity. The referee in bankruptcy of said court ordered that the certificate be sold by the trustee in bankruptcy free and clear of liens, other than the aforesaid lien of the Industrial National Bank of Miami, which, to protect itself, purchased the certificate.

After the foregoing events had transpired, the trustee in bankruptcy, together with the aforesaid bank and Florida United Parcel Service, Inc., applied to this commission for approval of transfer of the certificate to Florida United Parcel Service, Inc. Notice of filing of the joint application was given by the commission on August 15, 1957 pursuant to provisions of chapter 57-260, Acts of 1957 (section 323.041, Florida Statutes). Protests were filed and hearing on the joint application was held at Tallahassee on October 14, 1957. At this hearing the commission heard only arguments on pending motions. On October 17, 1957, order # 4057 was entered by the commission approving suspension of operations pending the commission's decision on the joint application. Subsequently, on April 7, 1958, the commission entered its order (order # 4243) on the pending motions in the transfer proceeding and directed that the cause be set for hearing on the merits at Miami. Said order again approved temporary suspension of operations pending final disposition of the joint application for transfer. This matter was held in abeyance pending disposition of an application of United Parcel Service, Inc. (with which company Florida United Parcel Service, Inc. was associated) for extension of its contract carrier certificate with Jordan Marsh Company.

On June 8, 1959 an amendment was filed to the joint application substituting Rapid Delivery Service, Inc. as the transferee of the certificate and setting forth that Florida United Parcel Service, Inc.

had sold to Rapid Delivery Service, Inc. its right to acquire the certificate. The joint application as now amended requests approval of the transfer as heretofore set forth in the first paragraph of this order. Notice of the filing of the amended joint application was issued by the commission on June 17, 1959. Protests were received and hearing on the amended application was held as aforesaid on August 17, 1959.

Apparently, the last operations were conducted under this certificate on April 17, 1957. Subsequent to that date lack of operation has been excused by the aforesaid orders ## 4057 and 4243 entered on October 17, 1957 and April 7, 1958, respectively. During the interim period, however, several other applications for certificates to authorize parcel delivery carriage have been granted for operations in Dade County—Russell's Parcel Service, Inc. (certificate # 613) ; United Parcel Service (certificate # 561) ; and Red Top Cab and Baggage Company (certificate # 551). Also, extensions have been sought and denied for Dade County operators to expand into Broward and Palm Beach counties. In connection with these applications for extensions and in considering the parcel delivery problems and competitive situation between these carriers in this three-county lower east coast area, the commission in its order # 4428 entered on November 5, 1958, pointed out that certificate # L-106 held by Delivery Service, Inc. and certificate # 418 held by Van C. Kussrow, as trustee in bankruptcy of Royal Fleet Service, Inc., both authorize operations in Broward and Palm Beach counties, whereas the other parcel delivery certificates issued in this area are limited territorially to certain portions of Dade County. In said order we stated as follows—

*"Proposed Safeguards*

"In his proposed order, the examiner pointed out that at the present time, there are two certificates outstanding which authorize common carrier parcel delivery service between all points in Dade, Broward, and Palm Beach counties. It was his conclusion, in which we concur after considering the entire record herein, that the evidence in these various proceedings fails to show that there is sufficient parcel delivery business originating in Dade County and destined to points in Broward and Palm Beach counties to justify the issuance of similar authority to additional carriers. It is quite apparent, however, from the record herein that the very nature of the operations in question makes it necessary for all such carriers either to have similar authority or, in lieu thereof, adequate protection

against possible competitive practices by those carriers having certificates with broader territorial scope. Where several parcel delivery carriers are authorized to call on the same prospective customers, and one carrier is limited territorially to one county while the other carrier is authorized to serve two additional adjoining counties, it is only natural that customers having shipments destined to the three counties will give it all to the carrier with the broader authority. Such carrier is armed with an unfair advantage and can seriously handicap the strictly intracounty operator. Certainly, it is an inconvenience for merchants to have several carriers picking up parcels at different times for delivery some with one authority and some with another. The merchant necessarily becomes confused and wonders why he cannot give all his intracounty and his inter-county business to one and the same carrier. Soon he will discover that he can, because the carrier armed with the broader authority will not long forego the competitive advan-tages of his position. Ultimately, only those carriers will sur-vive which are permitted to serve the three counties unless, of course, some adequate safeguard is devised which will give all the parcel delivery carriers a fair opportunity to develop a sound operation. We agree with the examiner that the answer does not lie in granting all parcel delivery carriers in Miami authority to serve the three counties of Dade, Broward, and Palm Beach. If such authority is granted, and the carriers are required, as they are, to furnish such service, there will not be sufficient business to support so many carriers and only those who are financially strong will have a chance to survive. Some safeguard must be adopted which will not permit the carriers to expand themselves out of business and thus deprive the public of necessary transportation service.

"We have carefully considered the safeguards proposed by the examiner and we feel that the examiner's proposal offers the best practical solution that has been presented. We concur with the examiner in his conclusion that in order to maintain a sound and efficient parcel delivery service for the Greater Miami area, and protect existing transportation services from destruction by excessive competition, no additional authority should be granted for the transportation of parcels from Miami for delivery to points in Broward and Palm Beach counties. The examiner has proposed that carriers presently authorized to serve Dade, Broward, and Palm Beach counties should be prohibited from furnishing local service between points in Dade County and should be restricted to a parcel

delivery service which originates in Dade County and is destined to points in Broward and Palm Beach counties. Further, he recommends that carriers which are restricted to service between points within Dade County should be permitted to accept parcels for delivery to points within Broward and Palm Beach counties via interchange with those carriers authorized to serve such counties. This plan will permit all of the Dade County carriers to pick up all parcel shipments from a given customer, handle that themselves which is to be delivered within Dade County and interchange that which is destined for Broward or Palm Beach County with one of the two carriers authorized to transport into said counties. At the same time, most of the carriers will be relieved of the added burden and expense of making runs into Broward and Palm Beach counties. They, of course, will share in the transportation charges as originating carriers. Testimony indicated that a fair division of such charges would be one-third for the originating carrier and two-thirds for the transporting and delivering carrier. We feel that such a division will be fair, at least, in the absence of any complaint and until the commission can hear and consider any complaints that may be filed concerning the division of such charges.

"In order for this interchange plan to work, it will be necessary for the transporting carrier to establish interchange points where the originating carriers can leave parcels for transportation and delivery to the various destination points. The establishing of such interchange points will be subject to approval by the commission. Whenever interchange points are established, the commission and all participating carriers should be notified. Transportation and delivery of parcels from points in Dade County to points in Broward and Palm Beach counties must be on the basis of rates and charges filed with and approved by the commission. The same rates and charges must be strictly observed by all participating carriers and the division of charges shall be the same regardless of the carriers involved."

Subsequent to the foregoing order the commission on June 16, 1959 entered its order # 4428-A which reaffirmed order # 4428 and made the following statement with relation to this present docket—

"Docket 5162-CCT was not directly involved in order 4428; however, the commission took notice of the fact that there was pending in said docket a joint application for the transfer of

certificate # 418 which authorizes, among other things, the transportation and delivery of parcels between points in Dade County and also between points in Dade County and points in Broward and Palm Beach counties. The commission stated in order 4428 that docket 5162-CCT would be set for a public hearing pursuant to a formal notice that would be sufficiently broad to permit consideration of such modifications, limitations and restrictions as might be found to be justified by the public interest and necessary to promote a sound and efficient parcel delivery transportation system for Dade, Broward and Palm Beach counties."

Section 323.041, Florida Statutes, provides in part as follows—

"When the transfer of any certificate, . . ., as herein provided, is approved by the commission, the commission is hereby empowered to reasonably alter, restrict or modify the terms and provisions of such certificate, or impose restrictions on such transfer where the public interest may be best served thereby, or the existing transportation facilities within the territory or on the route involved may be safeguarded or improved in the public interest."

In consideration of the entire record in this matter, the commission finds as follows—

1. The certificate here sought to be transferred has not been dormant for more than six months because lack of operation was excused by orders ## 4057 and 4243 as heretofore stated, pursuant to section 323.10, Florida Statutes.

2. This transfer of certificate will not be contrary to the public interest provided it is restricted as hereinafter set forth.

3. The transfer here sought should be approved provided this certificate is amended on transfer to restrict it either against the conduct of any operations in Broward and Palm Beach counties and points and places in Dade County south of Perrine or against the conduct of any operations in Dade County. In this way, the transferred certificate will authorize only operations between points and places in Dade County other than points south of Perrine or operations only in Broward and Palm Beach counties. The transferee should have the option of determining which authority it desires and the certificate will allow interchange with other parcel delivery carriers as set forth in this commission's order # 4428 and reaffirmed in order # 4428-A.

4. The alternative restriction provided for in finding no. 3 above is reasonable. The public interest will be best served thereby and such restriction is necessary to safeguard existing transportation facilities within the territory.

At the hearing on the amended application on conclusion of the joint applicants' case, protestants made a motion to dismiss same which was taken under advisement by the commission. It is the ruling of the commission that the motion to dismiss is denied.

It is ordered that the transfer of this certificate requested by the amended joint application be and it is hereby approved subject to the findings above set forth.

It is further ordered that the transferee, pursuant to provisions of sub-section (6) of section 323.041, Florida Statutes, notify this commission in writing within 15 days from the date hereof whether or not it will accept the certificate as so modified or restricted and if so, which alternative modification it desires.

Chairman JERRY W. CARTER dissents.